IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHY HENDERSON,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>And<br><br>MEDSTAR WASHINGTON HOSPITAL CENTER,<br><br>    Defendants. | No. 1:24-cv-31 (RDM)<br><br>Hon. Randolph D. Moss |

## AMENDED COMPLAINT

Plaintiff Kathy Henderson ("Plaintiff") brings this action against Washington Metropolitan Area Transit Authority ("WMATA") and MedStar Washington Hospital Center ("MedStar") (collectively, the "Defendants") for negligent supervision, violation of Title VI of the Civil Rights Act of 1964, negligent hiring and retention, intentional infliction of emotional distress and negligent infliction of emotional distress. Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants and in her favor on the grounds set forth herein, and award damages in the amount to be determined at trial, along with any further relief deemed just and proper by the Court:

## INTRODUCTION

1. Plaintiff brings this action to hold Defendants accountable for a series of negligent actions that resulted in her suffering serious harm. On December 26, 2020, what

should have been an ordinary bus ride through Washington, D.C., took a dangerous turn when Plaintiff was harassed and then physically attacked by an aggressive assailant. Despite the assault occurring in full view of passengers and transit personnel, WMATA Metro bus driver Donald Blue failed to intervene, disregarding WMATA protocols and Plaintiff's repeated requests for help. He did not call the police or take any steps to stop the attack. Instead, he opened the bus doors, allowing the assailant to forcibly remove Plaintiff from the bus, leaving her injured and without assistance.

2. WMATA has a video of these events but has refused to turn over a copy to Plaintiff's counsel.

3. But the mistreatment did not end there. Still reeling from her injuries, Plaintiff was taken by ambulance to MedStar Washington Hospital Center, expecting the urgent medical care she desperately needed. Instead, she was met with hostility. Without cause or warning, hospital security personnel escalated her suffering, subjecting her to yet another assault. Officer B. Dzieketey, towering over her, grabbed her by the collar, dragged her through the emergency room, and threw her out of the facility, stripping her not only of dignity but of her fundamental right to medical care.

4. Despite having just endured a brutal attack and suffering from significant injuries, Plaintiff was met with indifference. No MedStar healthcare provider, staff member, or employee on duty stepped in or spoke up as she was forcibly removed, even though it was clear she was in distress and was wearing a hospital wrist-band. She was not examined, not treated—simply cast out by the very institution entrusted to provide care.

5. This complaint details a disturbing and systemic failure at every level—the

failure of WMATA to protect a passenger from a known danger and the failure of MedStar Washington Hospital Center to provide the most basic medical care. As a direct result of these egregious acts of negligence, indifference, and outright violence, Plaintiff continues to suffer lasting physical and emotional harm. Accordingly, she seeks $2,000,000.00 in compensatory and punitive damages.

6. Accordingly, Plaintiff seeks damages from WMATA for negligence in not following its own guidelines and against Washington Hospital Center for failing to supervise its security guard and failing to provide any medical treatment to her.

## PARTIES

7. Plaintiff is a citizen and resident of Washington, DC.

8. Defendant Washington Metropolitan Area Transit Authority is a citizen and resident of Washington, DC.

9. Defendant Medstar Washington Hospital Center is a citizen and resident of Washington, DC.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the claims brought in this action pursuant to 28 U.S.C. § 1331, as the Plaintiff's claims arise under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and federal law.

11. This Court has supplemental jurisdiction over the Plaintiff's District of Columbia law claims for negligence, negligent supervision, negligent hiring and retention,

and negligent infliction of emotional distress pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because: a. Defendants conduct business in this District; (b) A substantial part of the events or omissions giving rise to the claims occurred in this District, including the actions and omissions of Defendants that directly led to Plaintiff's injuries. Specifically, MedStar Washington Hospital Center is located in the District of Columbia, and the incident involving Plaintiff occurred within the District. Accordingly, venue is proper in the United States District Court for the District of Columbia.

13. This Honorable Court has personal jurisdiction over Defendants because they are citizens and residents of this District.

## FACTUAL BACKGROUND

14. On December 26, 2020, Plaintiff was a passenger on an X2 Metro bus traveling from Northwest to Northeast Washington, D.C., after shopping in downtown. While seated alone in a forward-facing seat with her packages, an African American male ("Assailant I"), described as having a light brown complexion, approximately 6'2 in height, dreadlocks or braids, and wearing glasses, aggressively approached her. He demanded to sit in the open seat beside her and then forcibly inserted himself into the space. Approximately three other passengers encouraged Assailant I to take Plaintiff's belongings. He proceeded to create a loud disturbance, using profanity and directing derogatory, offensive language at Plaintiff, while the other passengers loudly egged him on.

15. Plaintiff immediately rose from her seat, approached the bus driver, and urgently requested that he call the police. She also retrieved her cellphone to summon law enforcement herself. Despite her pleas, the bus driver remained unresponsive—failing to call the police, activate the emergency alarm, or take required actiona to signal for help.

16. Meanwhile, Assailant I left his seat and aggressively advanced toward Plaintiff, launching a violent and unprovoked attack. He punched, kicked, and forcibly grabbed her bags as Plaintiff struggled to defend herself but was quickly overpowered. During the assault, the bus driver opened the bus doors. As the attack continued, Plaintiff was pushed off the bus.

17. The bus was stopped at the X2 bus stop across from the former Walmart at 99 H Street NW when Metro Police and Metro Field Operations Supervisor Amit Tonse arrived at the scene. The bus driver, Mr. Donald Blue, remained completely silent—never addressing Plaintiff before, during, or after the violent assault. He took no action to assist her, failed to ensure her safety, and did not even inquire about her well-being.

18. WMATA has filed an answer in this case denying liability.

19. Battered and in pain, Plaintiff was transported by ambulance to the emergency room at MedStar Washington Hospital Center, located at 110 Irving Street NW, Washington, D.C. 20010.

20. Upon arriving at the MedStar Washington Hospital Center emergency room, Plaintiff was identified and instructed to wait for medical attention. Within minutes, Metro Police Detective Brian Minson arrived to take her witness statement. A nurse then escorted

5

Plaintiff and Detective Minson to a private room with seating, providing a secure and confidential setting for Plaintiff to recount the violent and unprovoked attack.

21. While Plaintiff remained alone in the room awaiting medical attention, Detective Minson left. During this time, a MedStar Washington Hospital Center officer/security guard entered and aggressively demanded to know why she was there. The guard, later identified as B. Dzieketey, is a very large man, approximately 6'5" in height, and approximately 250 pounds of African descent. He appeared visibly agitated, hostile, angry, and otherwise appeared to be on amphetamines or some other illegal drug.

22. Without warning, he shouted at Plaintiff to 'get out,' then forcibly grabbed her by the collar while she remained seated. He yanked her from the chair, dragged her through the emergency room, and violently shoved her out of the facility. Plaintiff screamed in pain and terror—her cries carrying through the parking lot, where her daughter, waiting in a vehicle, heard them. Already injured from the brutal assault on the Metro bus, Plaintiff suffered additional harm from this unprovoked attack. Despite her condition, she managed to call 911, seeking assistance from the D.C. Metropolitan Police Department ('MPD').

23. MPD officers did not immediately respond to Plaintiff's call, forcing her to dial 911 again to report the unjustified, unprovoked, and excessive assault by Officer/Guard B. Dzieketey. When officers finally arrived, Dzieketey attempted to justify his actions by claiming that Plaintiff should not have been in the room.

24. His supervisor, an African American female, hospital security sergeant, then issued Plaintiff a five-year Barring Notice, using the medical information from Plaintiff's emergency room wristband to identify her. Both Officer/Guard B. Dzieketey and his

supervisor were fully aware that Plaintiff had been violently assaulted on a Metro bus, transported by ambulance to the emergency room, and was awaiting medical evaluation at the time of the incident.

25. Despite this awareness, Plaintiff was never evaluated for her injuries or provided any medical treatment on December 26, 2020. This denial of care underscores the unjustified and unlawful refusal of medical treatment at a public hospital facility.

26. The actions of Assailant I, the inaction of WMATA agent and Metro bus driver Donald Blue, and the failure of authorities to properly investigate or intervene created a deeply troubling chain of events that directly harmed the Plaintiff. Furthermore, the conduct of MedStar Washington Hospital Center personnel—including Officer/Guard B. Dzieketey, his sergeant, and other hospital staff—demonstrates a persistent pattern of assault, indifference, negligence, and the unwarranted denial of medical treatment at a public hospital.

27. As a direct result of these assaults and the gross negligence of all parties involved, the Plaintiff sustained severe injuries and continues to endure lasting physical and emotional harm. Accordingly, the Plaintiff seeks a court award of $2,000,000.00 (two million dollars) in compensatory and punitive damages, along with attorney's fees and court costs, both to remedy the harm she has suffered and to deter similar injustices in the future.

28. As a result of Plaintiff's chronic, life-threatening disease, undue stress risks multiple organ failure. The incidents described herein were extraordinarily stressful situations and caused her extreme discomfort, pain, and suffering.

## COUNT I
## NEGLIGENT SUPERVISION
(**Against Both Defendants MedStar and WMATA**)

29. Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

30. At all relevant times, Defendants MedStar and WMATA were responsible for the hiring, training, supervision, and oversight of their employees, including hospital security personnel, Metro bus driver Donald Blue, and other agents and employees involved in the events described herein.

31. Defendants had a duty to exercise reasonable care in supervising their employees to ensure that they acted lawfully, responsibly, and in accordance with the standards of their respective positions.

32. Defendant WMATA negligently supervised Metro bus driver Donald Blue, who failed to take any reasonable action to protect Plaintiff from a violent assault on public transportation, including but not limited to: (a) Failing to call for emergency assistance despite Plaintiff's clear and urgent pleas; (b) Failing to activate emergency protocols to stop the attack; and (c) Allowing the assailant to forcefully eject Plaintiff from the bus, instead of ensuring her safety.

33. Defendant MedStar Washington Hospital Center negligently supervised Officer/Guard B. Dzieketey, his supervisor, and other security personnel, who used unlawful force and physically removed Plaintiff from the hospital while she was seeking medical care. This failure of supervision is demonstrated by: (a) Allowing security personnel to use excessive force against vulnerable patients without justification or accountability; (b)

8

Failing to ensure that security personnel respected hospital policies and patient rights, including the right to medical treatment; and (c) Allowing security personnel to unlawfully bar Plaintiff from the hospital for five years despite her clear need for emergency medical care.

34. Defendants knew or should have known that their employees were acting negligently, recklessly, or unlawfully in the performance of their duties and failed to take appropriate corrective action.

35. Defendants' failure to properly supervise their employees created a foreseeable risk of harm, which directly resulted in Plaintiff suffering physical injuries, emotional distress, humiliation, pain and suffering, and denial of necessary medical treatment.

36. Medstar did not discharge its duty of care to Plaintiff.

37. Medstar is vicariously liable to Plaintiff for the conduct of its security guard, who at all times was under the supervision of, direction of, and control of Medstar.

38. As a direct and proximate result of Defendants' negligent supervision, Plaintiff has suffered and continues to suffer damages, including but not limited to medical harm, emotional distress, physical pain, and psychological trauma.

## COUNT II
### VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
**(Against Defendant MedStar Only)**

39. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

40. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) provides that: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

41. Defendant MedStar receives federal funding, including but not limited to Medicare and Medicaid reimbursements, and is therefore subject to Title VI requirements prohibiting racial discrimination.

42. On December 26, 2020, Plaintiff, an African American woman, was violently assaulted on a Metro bus and transported by ambulance to MedStar's emergency room in need of urgent medical care.

43. Despite her clear need for emergency medical attention, Plaintiff was met not with treatment, but with hostility, aggression, and racial and gender discrimination by MedStar's security personnel, specifically Officer/Guard B. Dzieketey and his supervisor.

44. Medstar's security guard's violence and refusal to listen to Plaintiff's explanation as to why she was located in the room where he found her was motivated by discrimination against Plaintiff as an African-American woman.

45. Plaintiff was forcibly removed from the hospital without receiving any medical evaluation or treatment, solely based on the discriminatory actions of MedStar personnel.

46. The discriminatory conduct of MedStar personnel was based on race and gender, as evidenced by: (a) The unjustified physical assault by Officer/Guard B. Dzieketey, who violently grabbed Plaintiff by the collar, lifted her from a chair, and dragged her through

10

the hospital before forcefully ejecting her from the premises; (b) The hospital's immediate issuance of a five-year Barring Notice, despite Plaintiff having arrived via ambulance after being a victim of a violent crime; (c) The complete denial of medical care, which deprived Plaintiff of the same benefits and services provided to other patients; and (d) The lack of any legitimate, non-discriminatory justification for MedStar's actions, as Plaintiff was not violent, disruptive, or engaging in any behavior that warranted removal from the hospital.

47. MedStar engaged in intentional discrimination by allowing its security personnel to wrongfully remove Plaintiff from a federally funded medical facility without treatment, thereby subjecting her to differential treatment on the basis of race and gender.

48. Medstar did not discharge its duty of care to Plaintiff.

49. Medstar is vicariously liable to Plaintiff for the conduct of its security guard, who at all times was under the supervision of, direction of, and control of Medstar.

50. As a direct and proximate result of MedStar's violation of Title VI, Plaintiff suffered: (a) Physical injuries due to the denial of medical care and the assault by hospital security; (b) Severe emotional distress, humiliation, and psychological trauma from being violently expelled from a public hospital; and (c) Additional pain and suffering caused by the unnecessary delay in obtaining medical care.

## COUNT III
### NEGLIGENT HIRING & RETENTION
### (Against Defendant MedStar Only)

51. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

52. At all relevant times, Defendant MedStar was responsible for hiring, training, supervising, and retaining security personnel to maintain a safe and secure environment for patients, visitors, and staff.

53. Defendant MedStar had a duty to exercise reasonable care in the hiring and retention of its security personnel, including ensuring that they were qualified, trained, and capable of performing their duties in a professional, lawful, and non-violent manner.

54. On or about December 26, 2020, Defendant MedStar employed Officer/Guard B. Dzieketey, an unqualified and dangerous individual, who was responsible for providing security at the hospital.

55. Despite Defendant MedStar's duty to conduct adequate background checks and ensure the suitability of its employees, Officer/Guard B. Dzieketey's actions demonstrated that he was unfit for his position. Specifically, Officer/Guard Dzieketey:

   a. Engaged in violent, aggressive, and unlawful conduct by forcibly removing Plaintiff from the hospital, despite her urgent need for urgent medical care;

   b. Used excessive physical force by lifting Plaintiff from her seat, dragging her through the emergency room, and expelling her from the hospital without justification; and

   c. Demonstrated hostility and a lack of professional conduct by shouting at Plaintiff and ignoring her vulnerable state.

56. Defendant MedStar was aware or should have been aware of Officer/Guard Dzieketey propensity for violence against African American women, that he posed a danger to patients and others, and prior actions or conduct that should have raised doubts about his

12

suitability for his position.

57. Despite this knowledge, Defendant MedStar continued to employ and retain Officer/Guard Dzieketey, thus permitting his dangerous and inappropriate conduct to result in harm to Plaintiff.

58. As a direct and proximate result of Defendant MedStar's negligent hiring and retention, Plaintiff suffered: (a) Physical injuries as a result of being assaulted and wrongfully ejected from the hospital; (b) Emotional distress, psychological trauma, and humiliation from the unprovoked and excessive force used against her in a medical facility; and (c) Denial of necessary medical care, which exacerbated her physical and emotional suffering.

59. Defendant MedStar's failure to adequately assess and supervise Officer/Guard Dzieketey's conduct constitutes a breach of its duty to ensure the safety and well-being of its patients and has caused foreseeable harm to Plaintiff.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant MedStar Only)

60. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

61. At all relevant times, Defendant MedStar was responsible for ensuring the safety, well-being, and appropriate treatment of its patients, including Plaintiff, who was seeking medical care after being violently assaulted.

62. On December 26, 2020, Plaintiff was subjected to extreme and outrageous conduct by employees of Defendant MedStar, including Officer/Guard B. Dzieketey and other hospital staff. This conduct was designed to cause emotional distress or was committed

13

with reckless disregard for the likelihood of such distress. Specifically, Defendant's employees: (a) Forcibly and aggressively removed Plaintiff from the emergency room, despite her being injured and in need of urgent medical care; (b) Used physical force to drag Plaintiff out of the facility while she was still in pain, having been a victim of an assault just prior to arriving at the hospital; (c) Shouted at Plaintiff, humiliating her and causing further emotional harm, when she was already vulnerable and traumatized by the violent assault on the Metro bus; (d) Refused to provide medical treatment or even inquire about Plaintiff's well-being after the violent assault, leaving her further traumatized and neglected.

63. The conduct of Defendant MedStar and its employees was extreme, outrageous, and beyond the bounds of decency, constituting an egregious abuse of power, authority, and duty of care owed to Plaintiff as a patient.

64. Defendant MedStar acted with intent or with reckless disregard for the emotional distress caused to Plaintiff, knowing that such conduct would likely cause her severe emotional harm, given her vulnerable condition after the assault and the subsequent mistreatment at the hospital.

65. As a direct and proximate result of Defendant MedStar's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including but not limited to: (a) Anxiety, fear, humiliation, and emotional trauma from being assaulted and wrongfully expelled from a hospital while needing care; (b) Depression, emotional pain, and a loss of trust in medical institutions as a result of the denial of treatment and aggressive actions taken by hospital staff; (c) Psychological harm that continues to affect Plaintiff's ability to seek or receive care in medical settings.

14

66. The emotional distress suffered by Plaintiff is so severe and pervasive that no reasonable person could be expected to endure it without substantial harm.

## COUNT V
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Both Defendants MedStar and WMATA)

67. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

68. At all relevant times, Defendants MedStar and WMATA owed a duty of care to Plaintiff to act reasonably and to avoid conduct that would foreseeably cause harm, including emotional distress.

69. Defendant WMATA, through its employee, Metro bus driver Donald Blue, breached this duty by failing to take reasonable action to protect Plaintiff from a violent assault while she was a passenger on public transportation. Specifically, Defendant WMATA's breach is demonstrated by: (a) Failing to call for emergency assistance despite Plaintiff's clear and urgent pleas; (b) Failing to activate emergency protocols to stop the attack; and (c) Allowing the assailant to forcefully eject Plaintiff from the bus instead of ensuring her safety.

70. Defendant MedStar Washington Hospital Center, through its security personnel, including Officer/Guard B. Dzieketey and his supervisor, breached its duty of care by subjecting Plaintiff to unlawful and excessive force, denying her necessary medical treatment, and expelling her from the hospital despite her vulnerable condition. MedStar's breach of duty is demonstrated by: (a) Allowing security personnel to use excessive force against a vulnerable patient without justification or accountability; (b) Failing to ensure that security personnel followed hospital policies and respected patient

15

rights, including the right to emergency medical treatment; and (c) Barring Plaintiff from the hospital for five years, depriving her of access to necessary medical care.

71. Defendants knew or should have known that their actions and omissions would cause Plaintiff to suffer severe emotional distress, particularly given that she had just been the victim of a violent assault and was in need of urgent medical care.

72. As a direct and proximate result of Defendants' negligent conduct, Plaintiff suffered severe emotional distress, including but not limited to: (a) Anxiety, fear, and humiliation from being assaulted, denied medical care, and forcibly removed from a public hospital; (b) Psychological trauma and emotional suffering due to the failure of Defendants to protect her from harm; (c) Ongoing distress and apprehension about seeking medical treatment or using public transportation due to the traumatic events caused by Defendants' negligence; and (d) Aggravation of Plaintiff's life-threatening chronic health condition, which is exacerbated by extreme stress, further endangering her well-being and requiring additional medical intervention.

73. Medstar's conduct did not discharge its duty of care to Plaintiff.

74. Medstar is vicariously liable to Plaintiff for the conduct of its security guard, who at all times was under the supervision of, direction of, and control of Medstar.

75. Plaintiff has suffered and continues to suffer significant emotional and psychological and physical harm, which a reasonable person would be unable to endure without serious consequences.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. NEGLIGENT SUPERVISION (Against Defendants MedStar Washington Hospital Center and WMATA):

a. Award compensatory damages in an amount to be determined at trial, including but not limited to medical expenses, emotional distress, physical pain, psychological trauma, and humiliation suffered by Plaintiff as a result of Defendants' negligent supervision.

b. Award punitive damages to punish Defendants for their negligent supervision and to deter such conduct in the future.

c. Order Defendants to implement corrective measures to prevent further occurrences of similar negligent supervision and ensure the safety and well-being of patients and the public.

2. VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (Against Defendant MedStar Washington Hospital Center Only):

a. Declare that Defendant MedStar Washington Hospital Center violated Title VI of the Civil Rights Act of 1964 by engaging in racial and gender discrimination against Plaintiff.

b. Award compensatory damages for physical injuries, emotional distress, humiliation, psychological trauma and ongoing physical pain, and the denial of medical care caused by MedStar's discriminatory conduct.

c. Award punitive damages to punish Defendant MedStar for their intentional discrimination and to deter such actions in the future.

d. Order Defendant MedStar to adopt and enforce policies and training to ensure compliance with Title VI and prevent further racial discrimination in its services.

3. NEGLIGENT HIRING & RETENTION (Against Defendant MedStar Washington Hospital Center Only):

a. Award compensatory damages in an amount to be determined at trial, including but not limited to medical expenses, emotional distress, psychological trauma, and humiliation resulting from Defendant MedStar's negligent hiring and retention of Officer/Guard B. Dzieketey.

b. Award punitive damages to punish Defendant MedStar for its failure to properly hire, train, and supervise its security personnel and to deter such conduct in the future.

c. Order Defendant MedStar to review and improve its hiring, training, and retention practices to ensure that only qualified and fit personnel are employed and retained.

4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against Defendant MedStar Washington Hospital Center Only):

a. Award compensatory damages for the severe emotional distress, anxiety, depression, and psychological trauma suffered by Plaintiff as a result of Defendant MedStar's extreme and outrageous conduct.

b. Award punitive damages to punish Defendant MedStar for its intentional infliction of emotional distress and to deter such conduct in the future.

c. Order Defendants to implement corrective measures to prevent further occurrences of similar negligence and ensure the safety and well-being of patients and the public.

5. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Against Defendants MedStar Washington Hospital Center and WMATA):

a. Enter judgment in her favor against Defendants MedStar Washington Hospital Center and WMATA.

b. Award compensatory damages, punitive damages, attorney's fees, costs, and any other relief this Court deems just and proper.

c. Order Defendant MedStar and WMATA to implement policies and procedures to ensure that patients and customers are treated with respect, dignity, and care, and to prevent any future acts of mistreatment or emotional harm.

5. General Relief:

a. Award Plaintiff the costs of this action, including attorney's fees, and any other relief that the Court deems just and proper.

b. Order such other and further relief as the Court may deem necessary and appropriate to remedy the harm suffered by Plaintiff as a result of Defendants' actions and omissions.

c. Any further relief the court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

March 27, 2025,                                            Respectfully submitted,

/s/ Steven Oster

Steven M. Oster
D.C. Bar No. 376030
David Lawler
DC Bar No. 497379
OSTER LAW FIRM
1320 19th Street, NW, Suite 800
Washington, DC 20036
(202) 596-5291 (p)
(202) 747-5862 (f)
steve@osterlawfirm.com
david@osterlawfirm.com

*Counsel to Plaintiff*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Complaint was sent by email and by first class mail to all counsel of record, this 30th day of March 2025.

/s/ *Steven M. Oster*
Steven M. Oster